JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Andrew Alapi appeals from the judgment of the trial court which awarded summary judgment to defendant Colony Roofing, Inc., ("Colony Roofing") in plaintiff's negligence action. For the reasons set forth below, we reverse and remand for further proceedings consistent with this opinion.
 {¶ 2} The record reveals that plaintiff was injured on October 24, 2000, when he fell from a ladder at one of Colony Roofing's jobs. Plaintiff filed a workers' compensation claim in connection with this injury. The Industrial Commission subsequently denied the claim and determined that plaintiff was not an employee of Colony Roofing. Thereafter, on October 23, 2002, plaintiff filed this negligence action against Colony Roofing. Plaintiff alleged that he was directed by defendant's agent to help with temporary roof repairs at a house on Essex Road in Cleveland Heights, that "[d]efendant's agent, Rick Myers, negligently set up Colony Roofing's ladder" and that while climbing down from the extension ladder, the "bottom of the ladder kicked out causing Plaintiff to fall."
 {¶ 3} Defendant denied liability and moved for summary judgment. In relevant part, defendant argued that it did not owe plaintiff a duty of care in this matter, that plaintiff stated in a June 2003 deposition that he did not know why the ladder "kicked out," and that a person of ordinary intelligence would appreciate the dangers inherent to a ladder being placed on a slippery driveway. Plaintiff likewise moved for summary judgment and maintained that defendant owed him a duty under the frequenter statute. In support of this motion, plaintiff submitted an affidavit from Myers, dated August 22, 2003, in which Myers averred that he improperly set up the extension ladder as he "pulled off the top section of Colony's extension ladder, i.e., the section without the feet, and set it upon the driveway." In addition, plaintiff argued that Colony Roofing failed to provide safety devices mandated by Ohio Administrative Code Section 4123:1-3-11 because the ladder did not have safety shoes, spikes or spurs.
 {¶ 4} On October 8, 2003, the trial court granted defendant's motion for summary judgment and stated:
 {¶ 5} "* * * The evidence did not establish pltf was a `frequenter' w/in R.C. 4101.11-12. Rather, the evidence establishes that Myers was an agent of deft which agent recruited pltf to work for deft. On these facts pltf could be held to be a fellow servant of Myers and therefore barred from bringing the within claim. Aside from that analysis there is no evidence contradicting deft's factual showing of no negligence or its factual showing of no negligence per se. * * *."
 {¶ 6} Plaintiff now appeals and assigns five errors for our review. For the sake of convenience, we shall address the assignments of error out of their predesignated order.
 {¶ 7} Plaintiff's second assignment of error states:
 {¶ 8} "The trial court erred in finding that plaintiff was a fellow servant and therefore barred from bringing the within claim."
 {¶ 9} Within this assignment of error, plaintiff notes that the Industrial Commission determined that he was not an employee of Colony Roofing so the fellow servant rule is not applicable. Alternatively, plaintiff notes that if he is ultimately found to be an employee of Colony Roofing, then there are genuine issues of material fact as to whether Myers directed his actions, thus barring application of the fellow servant rule.
 {¶ 10} With regard to procedure, we note that appellate review of summary judgments is de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; Zemcik v.La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581,585, 706 N.E.2d 860. The Ohio Supreme Court recently restated the appropriate test in Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-70, 696 N.E.2d 201 as follows:
 {¶ 11} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor."
 {¶ 12} With regard to the fellow servant rule, we note that in Kelbley v. Hurley (1994), 94 Ohio App.3d 409, 412,640 N.E.2d 1173, the court explained the doctrine as follows:
 {¶ 13} "The syllabus law pronounced in Kaiser [v. Strall
(1983), 5 Ohio St.3d 91, 449 N.E.2d 1] reads:
 {¶ 14} "`A party who is injured as a result of a co-employee's negligent acts, who applied for benefits under Ohio's workers' compensation statutes, and whose injury is found to be compensable thereunder is precluded from pursuing any additional common-law or statutory remedy against such co-employee.
 {¶ 15} "`Common-law damages are clearly unavailable under R.C. 4123.741 for injuries negligently inflicted by a co-employee in the course of employment.' Jones v. VIP Dev. Co. (1984),15 Ohio St.3d 90, 100, 15 OBR 246, 255, 472 N.E.2d 1046, 1055. The intent of workers' compensation is to bar claims against fellow employees by a co-employee who has previously been compensated and made whole.
 {¶ 16} "There is no dispute in the instant case that appellant and appellee were co-employees at the time of the accident. Similarly, there can be no dispute that the Bureau of Workers' Compensation found the injury to be compensable, inasmuch as the bureau paid appellee's claim. The fact that the bureau paid the claim also means the bureau was of the opinion the injury occurred in the course of appellee's employment."
 {¶ 17} In this matter, however, the Industrial Commission specifically determined that plaintiff was not an employee of Colony Roofing and it denied his claim. The trial court therefore erred to the extent that it determined that Colony Roofing was entitled to judgment as a matter of law because "pltf could be held to be a fellow servant of Myers and therefore barred from bringing the within claim."
 {¶ 18} This assignment of error is well-taken.
 {¶ 19} Plaintiff's fifth and first assignments of error are interrelated and state:
 {¶ 20} "The trial court erred in finding that the evidence did not establish that plaintiff was a "frequenter" within R.C.4101.11-12."
 {¶ 21} "The trial court erred in granting summary judgment when there were genuine issues of material fact to be determined."
 {¶ 22} Appellate review of summary judgments is de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241; Zemcik v. La Pine Truck Sales Equipment (1998),124 Ohio App.3d 581, 585, 706 N.E.2d 860. As noted previously, the summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor SoccerClub, supra.
 {¶ 23} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383,385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-59, 604 N.E.2d 138.
 {¶ 24} When a party has given clear, unambiguous answers to questions in a deposition that negate the existence of a genuine issue of material fact, a party cannot later create an issue to preclude summary judgment by creating an affidavit that contradicts the deposition testimony without an explanation.DeVaughn v. City of Dayton, Montgomery App. No. 19333, 2002-Ohio-6078, citing Bullock v. Intermodel Transp. Services,Inc. (Aug. 6, 1986), Hamilton App. No. C-850720. However, where the affidavit is offered from a different witness, and is not necessarily in conflict with the previous deposition testimony, such affidavit may create a genuine issue of material fact such as to preclude the award of summary judgment to the moving party. See White v. Turner, Scioto App. No. 01CA2802, 2002-Ohio-2802, in which the Court stated:
 {¶ 25} "We do not believe * * * that the expert's affidavit necessarily conflicts with his prior deposition testimony. Rather, appellant's expert's affidavit lacks a sufficient explanation of the underlying facts and conclusions. Thus, the affidavit at issue falls short of creating a conflict between the expert's affidavit and the expert's deposition testimony."
 {¶ 26} In order to survive a properly supported motion for summary judgment in a negligence action, a plaintiff must establish that genuine issues of material fact remain as to whether: (1) the defendant owed him a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See Texler v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271;Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142,539 N.E.2d 614; Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77, 472 N.E.2d 707. Whether a duty exists is a question of law for the court to determine. Mussivand v. David (1989),45 Ohio St.3d 314, 318, 544 N.E.2d 265.
 {¶ 27} R.C. 4101.11, the "frequenter statute," provides:
 {¶ 28} "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."
 {¶ 29} An independent contractor who is working on the premises and is not a trespasser is a business frequenter.Hunter v. State Dep't of Mental Retardation DevelopmentalDisabilities (Feb. 15, 1996), Franklin App. No. 95API09-1184;Keffer v. Honda of America Mfg. Co. (Dec. 7, 1990), Union App. No. 14-89-28.
 {¶ 30} The duty owed to frequenters does not extend, however, to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor. Eicher v. United StatesSteel Corp. (1987), 32 Ohio St.3d 248, 249, 512 N.E.2d 1165,1167. The Eicher Court explained:
 {¶ 31} "As stated in Wellman v. East Ohio Gas Co. (1953),160 Ohio St. 103, 51 Ohio Op. 27, 113 N.E.2d 629; `Where an independent contractor undertakes to do work for another in the very doing of which there are elements of * * * danger * * *, no liability * * * ordinarily attaches to the one who engaged the services of an independent contractor.' (Emphasis added.) Id. at paragraph one of the syllabus. Such an invitee may recover when the injury results `* * * by reason of the abnormally dangerous condition of the premises, only if the principal employer has, and the servant has not, actual or constructive notice of the existence of such condition.'" Davis v. Charles Shutrump SonsCo. (1942), 140 Ohio St. 89, 23 Ohio Op. 299, 42 N.E.2d 663, paragraph one of the syllabus.
 {¶ 32} Thus, in order for Wellman's "no duty" rule to apply, the independent contractor must be performing "an inherently dangerous task."
 {¶ 33} Colony Roofing correctly notes that working on a roof and traveling from the ground to the job site is inherently dangerous. See Lamb v. Summit Mall (Jan. 17, 2001), Summit App. No. 20011. In Lamb v. Summit Mall, the plaintiff was injured on a construction site while he was trying to transfer himself from a ladder that was attached to the side of the building to the roof. Lamb was an employee of a subcontractor. The Ninth District Court of Appeals found that "falling from a roof that one is working on, while climbing to the rooftop job site, is one of the inherent hazards of working on a roof." Id. Accord Shuman v.Detroit Diesel (Dec. 6, 1999), Stark App. No. 1999CA00101;Ciulla v. Panzica Construction Co. (July 14, 1993), Cuyahoga App. No. 63119, unreported.
 {¶ 34} However, the Supreme Court created an exception to the general "no duty" rule in Hirschbach v. Cincinnati Gas Elec.Co. (1983), 6 Ohio St.3d 206, 452 N.E.2d 326, syllabus, and held:
 {¶ 35} "One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." (Emphasis added.)
 {¶ 36} In Hirschbach, supra, the Court concluded that the jury could reasonably find the owner liable for the death of an independent contractor's employee because the owner "interfered with the mode of the job operation," "actually participated in the job operation by dictating the manner and mode in which the winching phase of the job was to be performed," and "had sole control over the safety features necessary to eliminate the hazard." (Emphasis added.) Id. at 208, 452 N.E.2d at 329. Active participation means "the general contractor directed the activity which resulted in the injury and or gave or denied permission for the critical acts leading to the employee's injury, rather than merely exercising a general supervisory role over the project."Bond v. Howard (1995), 72 Ohio St.3d 332, 650 N.E.2d 416 at syllabus. To actively participate in the work of an independent contractor's employee, the premises owner must give or deny permission for the critical acts resulting in the injury.Cafferkey v. Turner Constr. Co. (1986), 21 Ohio St.3d 110, 112,488 N.E.2d 189.
 {¶ 37} In this matter, the evidence submitted by plaintiff in opposition to the motion for summary judgment indicates that Myers actively participated in plaintiff's job operation by setting up the ladder for plaintiff. In his affidavit, Myers averred that he improperly set up the extension ladder because he "pulled off the top section of Colony's extension ladder, i.e., the section without the feet, and set it upon the driveway." From the foregoing, there is a genuine issue of material fact as to whether Colony Roofing actively participated in plaintiff's job operation by directing the activity which resulted in the injury. We therefore conclude that the trial court erred in determining that "[t]he evidence did not establish pltf was a `frequenter' w/in R.C. 4101.11-12. * * *."
 {¶ 38} This assignment of error is well-taken.
 {¶ 39} Plaintiff's third and fourth assignments of error are interrelated and state:
 {¶ 40} "The trial court erred in ruling that there is no evidence contradicting defendant's factual showing of no negligence or its factual showing of no negligence per se, where defendant's agent admits that he set up a section of ladder that did not have safety shoes, in violation of [Ohio] Administrative Code Rule 4121[sic]:1-3-11(D)(1)(B), where plaintiff was injured by the same ladder slipping out from under him."
 {¶ 41} "Whether the trial court erred in finding that a failure to obey the [Ohio] Administrative Code Rule 4121[sic]:1-3-11(D)(1)(B)is not a basis for negligence per se liability."
 {¶ 42} Within this assignment of error, plaintiff complains that the trial court erred in concluding "there is no evidence contradicting deft's factual showing of no negligence or its factual showing of no negligence per se."
 Negligence {¶ 43} As noted previously, R.C. 4101.11, the "frequenter statute," requires that employers "shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards * * *." R.C. 4101.12 in turn provides that "* * * No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."
 {¶ 44} From the foregoing, if an employer owes a duty under the frequenter statute, an employer will be liable in negligence for injury to a frequenter where it failed to eliminate a hazard which it, in the exercise of ordinary care, could have eliminated. See Hirschbach, supra, 6 Ohio St.3d at 208. AccordTackett v. Columbia Energy Group Serv. Corp., Franklin App. No. 01AP-89, 2001-Ohio-4090; ("the frequenter statute therefore merely codifies the common law of negligence.").
 {¶ 45} In this matter, defendant argued that plaintiff was not a frequenter and that negligence had not been shown since plaintiff did not know why the ladder "kicked out." In opposition, plaintiff argued that he is a frequenter and he submitted an affidavit from Colony Roofing's agent, Rick Myers, in which Myers stated that he improperly set up the extension ladder as he "pulled off the top section of Colony's extension ladder, i.e., the section without the feet, and set it upon the driveway."
 {¶ 46} On the state of the record, there is a genuine issue of material fact as to whether Colony Roofing was negligent for failing to use ordinary care in setting the ladder before plaintiff's ascent to the roof, and thereby proximately caused his injuries. Accordingly we conclude that the trial court erred in determining that Colony Roofing was not negligent as a matter of law. The third assignment of error is well-taken.
 Negligence Per Se {¶ 47} In opposition to Colony Roofing's motion for summary judgment, plaintiff argued that Colony Roofing was negligent per se because it failed to provide safety devices mandated by Ohio Administrative Code Section 4123:1-3-11 because the ladder did not have safety shoes, spikes or spurs.
 {¶ 48} The Ohio Supreme Court has defined the law of negligence per se in Ohio as follows:
 {¶ 49} "* * * Where a legislative enactment imposes upon any person a specific duty for the protection of others, and his neglect to perform that duty proximately results in injury to such another, he is negligent per se or as a matter of law. * * * Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case." See Eisenhuth v. Moneyhon (1954),161 Ohio St. 367, 119 N.E.2d 440, paragraphs two and three of the syllabus.
 {¶ 50} Portions of the Ohio Administrative Code dictate safety measures to be employed during construction. O.A.C.4123:1-3-01(A) sets for th the scope of these provisions as follows:
 {¶ 51} "The purpose of this chapter of the Administrative Code is to provide safety for life, limb and health of employees engaged in construction activity. In cases of practical difficulty or unnecessary hardship, the Ohio bureau of workers' compensation may grant exceptions from the literal requirements of this chapter to permit the use of other devices or methods when it is clearly evident the equivalent protection is thereby secured."
 {¶ 52} Pursuant to O.A.C. Section 4123:1-3-11(D), the following devices must be used with portable ladders:
 {¶ 53} "(1) General requirements for all portable ladders.
 {¶ 54} "(a) Metal rungs, steps, or treads.
 {¶ 55} "All metal rungs, steps or treads shall be corrugated, knurled, dimpled, or coated with skid-resistant material.
 {¶ 56} "(b) Safety shoes, spikes, or spurs.
 {¶ 57} "All portable ladders shall be equipped with safety shoes, metal spikes, or spurs. Safety shoes shall be surfaced with cork, carborundum, rubber, or other material with equivalent coefficient of friction. This does not apply to step ladders, lash ladders, or hook ladders."
 {¶ 58} Without reaching the issue of whether a "frequenter" rather than an "employee" may establish negligence per se from these regulations, we note that from the record presented in this instance, there was no genuine issue of material fact as to whether the ladder was properly equipped. Rather, the record suggests that a properly equipped ladder was improperly set with the portion intended for the ground extended over head. Accordingly, no violation of the requirements of O.A.C.4123:1-3-11(D) was shown. We are therefore unable to conclude that the trial court erred in rejecting plaintiff's claim of negligence per se. The fourth assignment of error lacks merit.
 {¶ 59} In accordance with all of the foregoing, the judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion.
 {¶ 60} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
 {¶ 61} It is, therefore, considered that said appellants recover of said appellees their costs herein.
 {¶ 62} It is ordered that a special mandate be sent to said court to carry this judgment into execution.
 {¶ 63} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Gallagher, J., concur.